FILED by ___ D.C.
ELECTRONIC

**June 30, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: _____

**09-CV-60967-Zloch/Rosenbaum**

ANALYTIX DATA SERVICES, LLC,
a Florida limited liability company,

       Plaintiff,

vs.

NEW CASTLE CONSULTING, LLC, a foreign
limited liability company, MICHAEL SULLIVAN,
individually, PRATAPREDDY BHIMIREDDY,
individually, and BUSINESS INTELLI
SOLUTIONS, INC., a foreign corporation,

       Defendants.

_____ /

## VERIFIED COMPLAINT

Plaintiff, Analytix Data Services, LLC, sues Defendants, New Castle Consulting, LLC, a foreign limited liability company, Michael Sullivan, individually, Pratapreddy Bhimireddy, individually, and Business Intelli Solutions, Inc., a foreign corporation, and avers:

### THE PARTIES

1.    Plaintiff, Analytix Data Services, LLC ("Analytix"), is an active Florida limited liability company having its principal place of business in Hallandale, Broward County, Florida.

2.    Defendant, New Castle Consulting, LLC ("New Castle"), is an active foreign limited liability company that has its principal place of business in Aldie, Virginia. At all times material hereto, New Castle was transacting and regularly doing business in this judicial district and is subject to the jurisdiction of this Court.

3.    Defendant, Michael Sullivan ("Sullivan"), is an individual that is a current resident of Aldie, Virginia. Upon information and belief, Sullivan serves as the owner and

managing member of New Castle. At all times material hereto, Sullivan was transacting and regularly doing business in this judicial district and is subject to the jurisdiction of this Court.

4.     Defendant, Pratapreddy Bhimireddy ("Bhimireddy"), is an individual that is a current resident of Dallas, Texas. Upon information and belief, Bhimireddy serves as a principal, officer or director of BIS. At all times material hereto, Bhimireddy was transacting and regularly doing business in this judicial district and is subject to the jurisdiction of this Court.

5.     Defendant, Business Intelli Solutions, Inc. ("BIS"), is an active foreign corporation that has its principal place of business in Richardson, Texas. At all times material hereto, BIS was transacting and regularly doing business in this judicial district and is subject to the jurisdiction of this Court.

6.     For the purposes of this Complaint, all of the above defendants are referred to collectively as "Defendants."

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction over the claims in this action under Section 43(a) of the Trademark Act of 1946, as amended, and United States Copyright Act, 17 U.S.C. § 101, *et seq.*, for trademark and copyright infringement.

8.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest, attorney's fees and costs.

9.     This Court has supplemental jurisdiction over the claims in this action arising under the common law or statutory law of Florida pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or

2

controversy and derive from a common nucleus of operative facts.   The Court also has jurisdiction over all claims of unfair competition pursuant to 28 U.S.C. § 1338(b).

10.   This Court has personal jurisdiction over this litigation under the Florida Long Arm Statute, Fla. Stat. § 48.193(1)-(2), due to the Defendants' conduct and tortuous acts committed in Florida as set forth herein.   Further, given the nature of Defendants activities in Florida, Defendants purposely availed themselves of the privilege of conducting activities within this state such that the Defendants should have reasonably anticipated being subjected to personal jurisdiction in Florida.

11.   Venue is proper in the United States District Court of the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted below occurred within this judicial district.

## FACTUAL ALLEGATIONS

### Plaintiff Analytix and the Development of the Analytix Mapping Manager

12.   Analytix is a leading data warehousing, business support systems integration and strategic technology consulting company.   Analytix's clients include companies and organizations from a wide array of industries across the United States, including, but not limited to, telecom, utilities, health care, high tech, manufacturing, financial services, and consumer products industries.

13.   Since its inception in March of 2006, Analytix has used an inherently distinctive logo to advertise and identify its proprietary technology, services and software, consisting of two three-dimensional cubes with distinct design and coloring alongside with the name "Analytix Data Services."   Analytix has extensively advertised and promoted products, services and software, together with its inherently distinctive marks and trade name.

3

14. Each version of the Analytix Software that is sold to its clients, as well as all other materials used for marketing and advertising of its products and services, including its website located at www.anlytixds.com, contains Analytix's distinctive name and logo.

15. During the course of its business, Analytix has developed and maintained valuable, proprietary, and confidential information, including its unique data mapping software technology called the Analytix Mapping Manager (the "Analytix Software").

16. In March of 2008, Analytix, through its employees and contractors under its control, created and developed the first version of the Analytix Software. Analytix has invested substantial time and resources in the creation and development of the Analytix Software, and enjoys a significant advantage in the marketplace through sole possession of the Analytix Software technology.

17. Since its creation, Analytix has maintained the Analytix Software in its sole and exclusive possession, and it was kept confidential and constitutes a trade secret under applicable Florida law.

18. As a normal business practice, in order to prevent the wrongful dissemination of its proprietary, confidential trade secrets, including its Analytix Software, Analytix requires that each of its contractors, subcontractors and employees, enter into strict agreements containing various restrictive covenants, including, but not limited to, non-competition, non-solicitation and confidentiality clauses.

### Analytix and its Business Relationship with Sullivan and New Castle

19. During July 2008, Sullivan began to work with Analytix as a sales representative. His duties involved selling the Analytix Software and Analytix's various services to its clients and prospective clients that located throughout the United States, including Floridas. In

4

exchange, Sullivan received commissions on a percentage basis of sales of the software or products he procured for Analytix.

20.    As part of his duties as a sales representative, Sullivan was necessarily given access to Analytix's confidential and proprietary information, including its clients and prospective clients, advertising and marketing techniques, accounts, as well as its Analytix Software.  Further, at all material times, Sullivan, individually and on behalf of New Castle, regularly and continuously communicated with Analytix and its principals in Broward County, via telephone and e-mail, and regularly conducted business on behalf of and with Analytix in Florida.

21.    On December 17, 2008, New Castle and Sullivan entered into an Independent Contractor Agreement with Analytix (the "Sullivan Agreement"), which contained provisions to protect Analytix's confidential, proprietary secrets, such as the Analytix Software.  A true and accurate copy of the Sullivan Agreement is attached hereto as Exhibit "A."

22.    Paragraph 2 of the Sullivan Agreement, titled "Confidential Information," provides:

> Contractor agrees that it will not, without ADS's express written consent, directly or indirectly communicate, divulge or disclose to, or use for the benefit of Contractor or any other person or entity other than ADS, any of ADS's trade secrets, proprietary data and other confidential information, including information received in confidence from their parties, which trade secrets, proprietary data and other confidential information were communicated to or otherwise learned or acquired by Contractor in the course of Contractor's association with ADS.  As used herein, the phrase "trade secrets, proprietary data and other confidential information" means information relating to any (a) marketing or sales information, including the key or contact personnel of clients of ADS, pending projects of clients of ADS and ADS's client's internal demand for consultants, (b) lists of ADS's present and prospective clients, (c) credit or financial information of ADS, (d) pricing, marketing or trade information, and (e) parties with which

5

or whom ADS does business or proposes to do business. Notwithstanding the foregoing, the foregoing definition of trade secrets, proprietary data and other confidential information shall not apply to such information which (i) is or becomes public information through no fault of Contractor, (ii) is required to be disclosed in the course of Contractor's activities on behalf of ADS or by a court or other governmental agency of competent jurisdiction, (iii) is already in the possession of Contractor and was not received on a confidential basis from ADS or any person associated with, ADS, provided that such source is not bound by a confidentiality agreement with ADS. The agreement of Contractor set forth in this paragraph shall remain in effect with respect to information learned or acquired by Contractor in the course of Contractor's association with ADS for as long as such information remains trade secrets, proprietary data and other confidential information.

23.    Paragraph 4 of the Sullivan Agreement, governing the development and

ownership of any proprietary or intellectual property, provides:

Contractor hereby assigns to ADS all of Contractor's right, title and interest in and to any and all inventions, discoveries, designs, ideas, computer systems, computer programs, formulas, drawings, models, processes, methods, techniques, devices, and data, and any and all patents, copyrights and improvements on any thereof (all hereinafter called "Developments"), whether or not patentable or copyrightable, that Contractor may solely or jointly conceive or acquired during Contractor's association with ADS, or where said conception or acquisition related directly to the research or development performed on behalf of ADS or its clients by Contractor, or where said conception or acquisition results directly from any task performed by Contractor for or in connection with ADS or its clients.   Contractor hereby assigns to ADS all Contractor's right, title and interest in and to all such Developments to ADS and to comply with all of ADS's reasonable instructions and sign all documents relative to such Developments from and after the time of creation. Contractor agrees to disclose promptly all such Developments to ADS and to comply with all of ADS's reasonable instructions and sign all documents relative to such Developments for the purposes of vesting, confirming or securing ADS's title thereto, and Contractor agrees to do anything else reasonably requested by ADS, at ADS's interest therein. Without limiting the foregoing, Contractor acknowledges and agrees that the copyright, patent, and any other intellectual property rights in all Developments which are created within the

6

scope of Contractor's activities on behalf of ADS belong to ADS and that any copyrightable Development so created by Contractor is a "work made for hire" within the meaning of the Copyright Act of 1976 for the purposes of that Act. Notwithstanding the foregoing provisions of this paragraph, Contractor understands and is hereby notified that this Agreement with respect to the assignment of Contractor's right, title and interest in Developments shall not apply to any Development which was developed entirely on Contractor's own time and for which no equipment, supplies, facility or trade secret information of ADS or of a client of ADS was or were used, unless (i) the Development relates to the business of ADS or a client of ADS or to ADS's actual or demonstrably anticipated research or development, or (ii) the Development results from any work performed by Contractor in connection with Contractor's association with ADS. The provisions of this paragraph shall survive termination of Contractor's associated with ADS.

24.    Paragraphs 5(a) and (b) of the Sullivan Agreement, containing restrictive covenants not to compete and solicit, provide:

(a)    Covenant Not to Compete.    Contractor agrees that during, and for a period of two years after the termination of Contractor's associated with ADS, Contractor shall not engage in systems design, consulting or service or the business of technical staff augmentation for or with respect to any client of ADS for which Contractor performed services pursuant to an agreement or understanding with ADS or with respect to which Contractor obtained or had access to trade secrets, proprietary data or other confidential information of ADS. Contractor understands this is a possible right-to-hire position whereas ADS reserves the right to hire consultant after 6 months of tenure as a paid consultant or otherwise mutually agreed and written.

(b)    Covenant Not to Solicit.    Contractor agrees that during and for a period of two years after the termination of Contractor's association with ADS, Contractor will not perform services or design, develop, manufacture, or sell products to any client of ADS for which Contractor performed services pursuant to an agreement or understanding with ADS or with respect to which Contractor obtained or had access to contact information by association or on business with ADS, trade secrets, proprietary data or other confidential information of ADS, to the extent that such products and services compete with products sold or services performed by ADS.

25.     During December of 2008, during while serving as an independent contractor for Analytix, Sullivan began to develop a relationship with Thompson Advisory Group ("TAG") and Blackoak Partners ("Blackoak"), prospective clients of Analytix.

26.     On April 8, 2009, Sullivan, individually and on behalf of New Castle, and the principals of Analytix met with TAG in Orlando, Florida, to discuss business opportunities, account strategies and the development of possible business relationship between TAG and Analytix.   In addition to TAG, Sullivan was attempting to secure a business relationship with Blackoak, which its principals were colleagues and acquaintances of TAG's principals.

27.     On April 9, 2009, Analytix and its representatives, including Sullivan, performed a presentation and demonstration of the Analytix Software to Lockheed Martin and TAG in Orlando, Florida.

28.     Later, on April 16, 2009, Analytix and Sullivan attempted to reach terms as to the continuation of his relationship and possible equity ownership in Analytix; however, due to a disagreement in connection Sullivan's proposed terms, Sullivan terminated his relationship with Analytix as an independent contractor.

### Analytix and its Business Relationship with Bhimireddy and BIS

29.     Beginning on February 6, 2006, Bhimireddy began working as an independent contractor and consultant for Analytix on various IT related projects through his employer at the time, Datasoft Technologies, Inc. ("Datasoft"), and subsequently, a company named IT Cell due to his request that Analytix transfer its billing arrangement in light of Bhimireddy's immigration status.

30.     As part of his duties as a contractor for Analytix, Bhimireddy was necessarily given access to Analytix's confidential and proprietary information, including its clients and

8

prospective clients, trade secrets, software, technology, advertising and marketing techniques, accounts, as well as its Analytix Software.  Further, at all material times, Bhimireddy, regularly communicated with Analytix and its principals in Broward County, via telephone and e-mail, and regularly conducted business on behalf of and with Analytix in Florida.

31.     Due to the nature of the relationship between Bhimireddy and Analytix, and his necessary exposure to Analytix's proprietary and confidential information while performing as an independent contractor, Analytix required that Bhimireddy execute the Agreement Concerning Confidentiality, Proprietary Developments and Covenant not to Compete, which became effective on January 31, 2006 (the "Bhimireddy Agreement").  A true and accurate copy of the Bhimireddy Agreement is attached hereto as Exhibit "B."

32.     Paragraph 1 of the Bhimireddy Agreement, titled "Confidential Information," provides:

> Consultant agrees that Consultant will not, without ADS's express written consent, directly or indirectly communicate, divulge or disclose to, or use for the benefit of Consultant or any other person or entity other than ADS, any of ADS's trade secrets, proprietary data and other confidential information, including information received in confidence from third parties, which trade secrets, proprietary data and other confidential information were communicated to or otherwise learned or acquired by Consultant in the course of Consultant's association with ADS.  As used herein, the phrase "trade secrets, proprietary data and other confidential information" means information relating to any (a) marketing or sales information, including the key or contact personnel of clients of ADS, pending projects of clients of ADS and ADS's client's internal demand for consultants, (b) lists of ADS's present and prospective clients, (c) credit or financial information of ADS, (d) pricing, marketing or trade information and (e) parties with which or whom ADS does business or proposes to do business. Notwithstanding the foregoing, the foregoing definition of trade secrets, proprietary data and other confidential information shall not apply to such information which (i) is or becomes public information through no fault of Consultant, (ii) is required to be disclosed in the course of Consultant's activities on behalf of ADS

9

or by a court or other governmental agency of competent jurisdiction, (iii) is already in the possession of Consultant and was not received on a confidential basis from ADS or any person associated with ADS either prior to or after the formation of ADS, or (iv) becomes available to Consultant on a non-confidential basis from a source other than ADS or a client of, or a person associated with, ADS, provided that such source is not bound by a confidentiality agreement with ADS. The agreement of Consultant in the course of Consultant's association with ADS for as long as such information remains trade secrets, proprietary data and other confidential information.

33.     Paragraph 3 of the Bhimireddy Agreement, governing the development and

ownership of any proprietary or intellectual property, provides:

Consultant hereby assigns to ADS all of Consultant's right, title and interest in and to any and all inventions, discoveries, designs, ideas, computer systems, computer programs, formulas, drawings, models, processes, methods, techniques, devices, and data, and any and all patents, copyrights and improvements on any thereof (all hereinafter called "Developments"), whether or not patentable or copyrightable, that Consultant may solely or jointly conceive or acquire during Consultant's association with ADS, or where said conception or acquisition relates directly to the research or development performed on behalf of ADS by Consultant, or where said conception or acquisition results directly from any task performed by Consultant for or in connection with ADS. Consultant hereby assigns to ADS's right, title and interest in and to all such Developments to ADS and to comply with all of ADS's reasonable instructions and sign all documents relateive to such Developments for the purpose of vesting, confirming or securing ADS's title thereto, and Consultant agrees to do anything else reasonably requested by ADS, at ADS's sole cost and expense, to anable ADS to secure a patent, to register a copyright or to protect ADS's interest therein. Without limiting the foregoing, Consultant acknowledges and agrees that the copyright, patent, and any other intellectual property rights in all Developments which are created within the scope of Consultant's activities on behalf of ADS belong to ADS and that any copyrightable Development so created by Consultant is a "work made for hire" within the meaning of the Copyright Act of 1976 for the purposes of that Act. Notwithstanding the foregoing provisions of this paragraph, Consultant understands and is hereby notified that this Agreement with respect to the assignment of Consultant's right, title and interest in Developments shall not apply to any Development

which was developed entirely on Consultant's own time and for which no equipment, supplies, facility or trade secret information of ADS or of a client of ADS was or were used, unless (i) the Development relates to the business of ADS or a client of ADS or to ADS's actual or demonstrably anticipated research or development, or (ii) the Development results from any work performed by Consultant in connection with Consultant's association with ADS. The provisions of this paragraph shall survive termination of Consultant's association with ADS.

34.    Further, Paragraphs 4(a) and (b) of the Bhimireddy Agreement, containing

restrictive covenants not to compete and not to solicit, provide:

(a)    Covenant Not to Compete.    Consultant    agrees    that, during, and for a period of two years after the termination of Consultant's association with ADS, Consultant shall not directly engage in systems, design, consulting or service or the business of technical staff augmentation for or with respect to any client of ADS for which Consultant performed services pursuant to an agreement or understanding with ADS or Contractor or with respect to which Consultant performed services pursuant to an agreement or understanding with ADS or Contractor or with respect to which Consultant obtained or had access to trade secrets, proprietary data or other confidential information of ADS. Consultant agrees that the foregoing covenant shall apply to the geographical region consisting of Chicago, Illinois and the metropolitan Chicago area, including the Illinois counties of Lake and Porter. Consultant acknowledges that any solicitation of ADS' clients to use any other means of services other than ADS services is a violation of this agreement and is enforceable under the damages section 9.

(b)    Covenant Not to Solicit.    Consultant agrees that during, and for a period of two years after the termination of Consultant's association with ADS (whether or not such association is by virtue of Contractor's association with ADS), Consultant will not perform directly or indirectly services or design, develop, manufacture, or sell products to or for current clients of ADS (or assist others to conduct such activities), whether or not such clients are located within the geographic restriction set forth in (a) above, to the extent that such products and services compete with products sold or services performed by ADS.

11

35. Subsequently, during November of 2008, while Bhimireddy was bound by the Bhimireddy Agreement, Analytix contemplated retaining and contracting with Bhimireddy and BIS, a company owned by Bhimireddy, for the purpose of expanding and developing a new reporting module for the Analytix Software.

36. As a result, on November 28, 2008, Analytix granted Bhimireddy and BIS exclusive access to its proprietary and confidential Analytix Software that was housed on its computer system and servers located in Hallandale, Florida. Analytix provided Bhimireddy and BIS with online download instructions and confidential login information to gain access to the Analytix Software for the sole purpose of developing the new reporting module.

37. The Analytix Software was at all times material hereto maintained securely on Plaintiff's server, physically located in Broward County, Florida.

38. On that date, Bhimireddy, individually and on behalf of BIS, downloaded a version of the Analytix Software from its servers for the limited purpose of developing the new module. However, the new reporting module was never developed by Bhimireddy.

## Defendants' Wrongful Competition, Misappropriation, Infringing and Unfairly Competitive Activities

39. In addition, on or before May 1, 2009, sometime following Sullivan's and New Castle's separation from Analytix, Sullivan, individually and on behalf of New Castle, Bhimireddy, individually and on behalf of BIS, together orchestrated a plan to gain access to and misappropriate the Analytix Software maintained on Plaintiff's Florida-based server.

40. At that time, Defendants, without Analytix's authorization, misappropriated the Analytix Software from Analytix and began attempting to solicit and offer for sale the Analytix Software to Analytix's clients and prospective clients.

12

41.     Specifically, on May 1, 2009, unbeknownst to Analytix, Sullivan, individually and on behalf of New Castle, continued to communicate with Analytix's prospective client, Blackoak, in an attempt to sell it the Analytix Software that Defendants misappropriated in competition with and to the detriment of Analytix.

42.     On that date, a principal of Blackoak contacted Analytix and confirmed that Sullivan, individually and on behalf of New Castle, had contacted Blackoak in attempt to sell the Analytix Software and claimed intellectual property rights to the software.     In doing so, Defendants used Analytix's logo, mark, and trade name.

43.     Interestingly, Analytix also discovered following Sullivan's and New Castle's separation from Analytix, that Sullivan had attempted to negotiate a partnership with TAG and Blackoak in which he had offered them 30% equity of Analytix without the consent of Analytix.

44.     Subsequently, due to Defendants' continuous attempts to solicit and sell Blackoak the Analytix Software, on May 20, 2009, Blackoak contacted Analytix and explained that it was confused of the ownership of the Analytix Software due to Sullivan's competing claim that he and New Castle own the Analytix Software.

45.     Consequently, despite Analytix's express and written confirmation that it is the sole owner of the Analytix Software and related technology, Blackoak declined to enter into a business relationship with Analytix, due to the confusion caused by Sullivan's untrue claim of ownership.

### Confusion in the Marketplace and Damages to Analytix

46.     There is confusion in the marketplace due to the Defendants' misuse and attempted sale of the Analytix Software, logo, and trade name, which confusion operates to the detriment of Analytix. The confusion is based on several facts, including, but not limited to: (a)

13

Defendants' use and sale of the Analytix Software to the public; (b) Defendants' false representations to the public, including Analytix's prospective clients, that said Defendants have exclusive intellectual property rights and ownership to commercialize the Analytix Software; and (c) the Defendants' use of the Analytix logo, mark and trade name that is located on the Analytix Software.

47.     This is despite Analytix's use of its business and product names, logo, software, the content, and its technology well before Defendants began using these items.

48.     The Defendants' use of the identical name, information, software, and logo belonging solely to Analytix exceeds the doctrine of fair use, has been intentional and willful, and has been done with bad faith intent to profit from the goodwill and reputation associated with Analytix's successful and established business.

49.     The confusion triggered by Defendants' copying and misappropriation of all aspects of Analytix's business, logo, name and its confidential, proprietary trade secrets, has harmed, and continues to harm and cause significant financial injury to Analytix.

50.     Analytix's prospective clients, including Blackoak, have complained and ultimately turn down the business of Analytix as a result of Defendants' wrongful actions.

51.     All of the Defendants' wrongful acts and activities are still being committed by Defendants, despite Analytix's written protest to cease and desist.

52.     All conditions precedent to the claims now sued upon have occurred, been satisfied, or have been waived.

53.     Plaintiff has retained the undersigned law firm to represent it in this litigation and is obligated to pay the legal fees and costs incurred herein.

## COUNT I- BREACH OF CONTRACT AGAINST
## SULLIVAN AND NEW CASTLE

54.     Paragraphs 1 through 53 above are incorporated herein as if specifically pled and set forth herein.

55.     Defendants entered into the Sullivan Agreement with Plaintiff on December 28, 2008.

56.     Defendants breached the Sullivan Agreement, including, but not limited to breaching Paragraphs 2, 4, and 5(a) and (b), by: (1) wrongfully competing, soliciting and attempting to sell the Analytix Software to Analytix's clients and prospective clients for their own financial and monetary gain; and (2) misappropriating, using and disclosing Plaintiff's confidential and proprietary information, including its Analytix Software.

57.     Defendants continue their wrongful competition, and continue to wrongfully possess Plaintiff's confidential and proprietary information, including its Analytix Software, despite notice to cease and desist.

58.     Plaintiff has suffered and continues to suffer significant financial injury as a result of Defendants' breaches of the Sullivan Agreement.

59.     In addition to substantial financial injury, Defendants' breaches of the Sullivan Agreement has caused and continues to cause significant irreparable injury to Plaintiff's goodwill and substantial relationship with its clients and prospective clients, for which it has no adequate remedy at law.

60.     Plaintiff has legitimate business interests that justify enforcement of the Sullivan Agreement by an injunction against Defendants, and all individuals and entities acting in concert with Defendants, including, but not limited to, Bhimireddy and BIS.

15

WHEREFORE, Plaintiff prays for judgment against Defendants, New Castle Consulting, LLC, and Michael Sullivan for: (a) its damages caused by Defendants' breaches of the Sullivan Agreement; (b) preliminary and permanent injunctions, enjoining and restraining Defendants, their officers, directors, principals, agents, servants, employees, attorneys, successors and assigns, and all those acting in concert with them, including, but not limited to, Bhimireddy and BIS., from: (i) competing within the prohibited area for a period of two years from the date of the last breach, (ii) soliciting Plaintiff's clients or prospective clients for a period of two years from the date of the last breach; (iii) using, possession or disclosing Plaintiff's confidential and proprietary information, including its Analytix Software; (c) attorney's fees and costs pursuant to Paragraph 13 of the Sullivan Agreement; and (d) such other and further relief as this Court deems just and proper.

## COUNT II- BREACH OF CONTRACT AGAINST BHIMIREDDY

61. Paragraphs 1 through 53 above are incorporated herein as if specifically pled and set forth herein.

62. Defendant entered into the Bhimireddy Agreement with Plaintiff on March 31, 2006.

63. Defendant breached the Bhimireddy Agreement, including, but not limited to breaching Paragraphs 1, 2, and 4(a) and (b), by: (1) wrongfully competing, soliciting and attempting to sell the Analytix Software to Analytix's clients and prospective clients for their own financial and monetary gain; and (2) misappropriating, using and disclosing Plaintiff's confidential and proprietary information, including its Analytix Software.

64.     Defendant continues his wrongful competition, and continues to wrongfully possess Plaintiff's confidential and proprietary information, including its Analytix Software, despite notice to cease and desist.

65.     Plaintiff has suffered and continues to suffer significant financial injury as a result of Defendant's breaches of the Bhimireddy Agreement.

66.     In addition to substantial financial injury, Defendant's breaches of the Bhimireddy Agreement has caused and continues to cause significant irreparable injury to Plaintiff's goodwill and substantial relationship with its clients and prospective clients, for which it has no adequate remedy at law.

67.     Plaintiff has legitimate business interests that justify enforcement of the Bhimireddy Agreement by an injunction against Defendant, and all individuals and entities acting in concert with Defendant, including, but not limited to, Sullivan, New Castle and BIS.

WHEREFORE, Plaintiff prays for judgment against Defendant, Pratapreddy Bhimireddy, for: (a) its damages caused by Defendant's breaches of the Bhimireddy Agreement; (b) preliminary and permanent injunctions, enjoining and restraining Defendant, his agents, servants, employees, attorneys, successors and assigns, and all those acting in concert with him, including, but not limited to, Sullivan, New Castle and BIS, from: (i) competing within the prohibited area for a period of two years from the date of the last breach, (ii) soliciting Plaintiff's clients or prospective clients for a period of two years from the date of the last breach; (iii) using, possession or disclosing Plaintiff's confidential and proprietary information, including its Analytix Software; and (c) such other and further relief as this Court deems just and proper.

## COUNT III- TORTIOUS INTERFERENCE WITH ADVANTAGEOUS
## BUSINSS RELATIONS AGAINST ALL DEFENDANTS

68.     Paragraphs 1 through 53 above are incorporated herein as if specifically pled and set forth herein.

69.     At all times material to this action Defendants had actual and intimate knowledge of the Plaintiff's advantageous business relationship with its clients and prospective clients, including, but not limited to, TAG and Blackoak.

70.     Defendants, for their own personal and financial benefit, intentionally interfered and disrupted Plaintiff's advantageous business relationships without justification.

71.     Plaintiff has suffered significant financial injury as a result of Defendants' unjustified and improper tortious interference with Plaintiff's advantageous business relationships.

72.     In addition to significant financial injury, Defendants' tortious interference with Plaintiff's advantageous business relationships has caused and continues to cause significant irreparable injury for which there is no adequate remedy at law.

73.     Plaintiff has legitimate business interests in enjoining further tortious interference with Plaintiff's advantageous business relationships.

74.     Defendants' interference with Plaintiff's advantageous business relationships was and is intentional and malicious.

WHEREFORE, Plaintiff prays for judgment against Defendants, New Castle Consulting, LLC, and Michael Sullivan for: (a) its damages caused by Defendants' tortuous interference with Plaintiff's advantageous business relationships and contracts with its clients and prospective clients and its contractors; (b) preliminary and permanent injunctions, enjoining and restraining Defendants, their officers, directors, principals, agents, servants, employees, attorneys,

successors and assigns, and all those acting in concert with them, from tortuously interfering with Plaintiff's advantageous business relationships and contracts with its clients and prospective clients and its contractors; and (c) such other and further relief as this Court deems just and proper.

## COUNT IV - VIOLATION OF FLORIDA'S UNIFORM TRADE SECRETS ACT CHAPTER 688 *et seq.*, FLORIDA STATUTES, AGAINST ALL DEFENDANTS

75.     Paragraphs 1 through 53 above are incorporated herein as if specifically pled and set forth herein.

76.     Analytix has adopted reasonable measures as described herein to maintain the secrecy its confidential, proprietary information and trade secrets, including its Analytix Software.

77.     Analytix has invested substantial amounts of money and resources in the development of safeguards, such as housing it on its secure servers located in Florida, to protect its trade secrets, including the Analytix Software. The Analytix Software and its technology is of great commercial importance to Analytix.

78.     Such confidential, proprietary information and trade secrets, including its Analytix Software that was misappropriated by Defendants qualifies as trade secrets pursuant to Chapter 688, Florida Statutes, because it is not available to the public through the use of proper means, and would be of great value to Analytix's competitors, including Defendants.

79.     Defendants have no legal right to possess or use Plaintiff's trade secrets.

80.     Defendants' possession, use and disclosure of Plaintiff's confidential, proprietary information and trade secrets, including its Analytix Software, to the pubic and consumers, with full knowledge of its unlawful purpose and despite notice of its infringing nature and demands to

19

cease and desist the same, constitutes the willful and wanton misappropriation of its trade secrets in disregard of Plaintiff's rights.

81.    Defendants' misappropriation has caused and continues to cause Analytix great financial injury.

82.    Additionally, Defendants' misappropriation, unless enjoined by the Court, will continue to cause Plaintiff to sustain irreparable damage, loss and injury, for which Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays for judgment against Defendants, New Castle Consulting, LLC, Michael Sullivan, Pratapreddy Bhimireddy, and Business Intelli Solutions, Inc.: (a) awarding Plaintiff its damages as a result of Defendants' misappropriation of the Analytix Software and Plaintiff's confidential, proprietary trade secrets; (b) entering preliminary and permanent injunctions, enjoining and restraining Defendants, their officers, directors, principals, agents, servants, employees, attorneys, successors and assigns, and all those acting in concert, from making any further use or otherwise disclosing or distributing, to any proprietary property or trade secrets relating to the Analytix Software and its trade secrets, and specifically enjoining Defendants, its officers, directors, principals, agents, servants, employees, attorneys, successors and assigns, and all those acting in concert, from copying, duplicating, licensing, selling, distributing, publishing, leasing, renting or otherwise marketing the Analytix Software and all other products containing, using, and/or substantially derived from Analytix's proprietary technology, software or trade secrets; (c) awarding Plaintiff its reasonable attorney's fees and costs pursuant to Section 688.005, Florida Statutes, and (d) such other relief that this Court deems just and proper.

## COUNT V –COPYRIGHT INFRINGEMENT
## AGAINST ALL DEFENDANTS

83.     Paragraphs 1 through 53 above are incorporated herein as if specifically pled and set forth herein.

84.     Plaintiff, Analytix, has been the sole owner of the copyright that is contained within and part of the Analytix Software, as well as the sole owner of all underlying derivative works, since its creation in March of 2008.

85.     Without consent, license, or authorization of Plaintiff, Analytix, Defendants have infringed Analytix's copyrights by reproducing and distributing the Analytix Software that is identical or substantially similar to Analytix's copyrighted work or constituent elements thereof, and/or by creating derivative works based on Analytix's copyrighted work or constituent elements thereof, all in violation of Plaintiff's rights under the United States Copyright Act, 17 U.S.C. § 101, *et seq.*

86.     Plaintiff, Analytix, has been damaged by the Defendants' wrongful conduct in that it has suffered by, among other things, lost sales and profits, harm to its goodwill, identity, and reputation, and by confusion among the confusing public.

87.     Defendants' infringement, unless enjoined by the Court, will continue to cause Plaintiff to sustain irreparable damage, loss and injury, for which Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays for judgment against Defendants, New Castle Consulting, LLC, Michael Sullivan, Pratapreddy Bhimireddy, and Business Intelli Solutions, Inc. for: (a) preliminary and permanent injunctive relief against Defendants, its officers, directors, principals, agents, servants, employees, attorneys, successors and assigns, and all those acting in concert, as is necessary and appropriate to prevent further infringing activities by these Defendants,

21

including activities that cause confusion and/or are likely to cause confusion in the marketplace; (b) an award of damages adduced at trial and/or statutory damages and exemplary damages; (c) a disgorgement of profits by these Defendants attributable to their violations of applicable state or federal law; and (d) such other and further relief as this Court deems just and proper.

## COUNT VI – VIOLATION OF LANHAM ACT § 43(a)(1)(A) AGAINST ALL DEFENDANTS

88.     Paragraphs 1 through 53 above are incorporated herein as if specifically pled and set forth herein.

89.     By the aforementioned conduct, specifically including, but not limited to: (a) Defendants' use and sale of the Analytix Software to the public; (b) Defendants' false representations to the public, including Analytix's prospective clients, that said Defendants have exclusive intellectual property rights and ownership to commercialize the Analytix Software; and (c) the Defendants' use of the Analytix logo, mark and trade name, Defendants have violated the prohibitions set forth in Section 43(a) of the Trademark Act, 15 U.S.C. § 1125(a), in the marketing and offering their competitive services and stolen product for sale.

90.     Defendants' wrongful conduct has occurred within interstate commerce and has had a substantial impact on interstate commerce.

91.     The actions of Defendants described hereinabove constitute false designation of origin, unfair competition, and false and misleading descriptions of fact in violation of Section 43(a) of the Trademark Act, 15 U.S.C. § 1125(a).

92.     Plaintiff, Analytix, has been damaged by the Defendants' wrongful conduct in that it has suffered by, among other things, lost sales and profits, harm to its goodwill, identity, and reputation, and by confusion among the confusing public.

22

93.     Defendants' infringement, unless enjoined by the Court, will continue to cause Plaintiff to sustain irreparable damage, loss and injury, for which Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays for judgment against Defendants, New Castle Consulting, LLC, Michael Sullivan, Pratapreddy Bhimireddy, and Business Intelli Solutions, Inc. for:

(a) preliminary and permanent injunctive relief against Defendants, its officers, directors, principals, agents, servants, employees, attorneys, successors and assigns, and all those acting in concert, as is necessary and appropriate to prevent further infringing activities by these Defendants, including activities that cause confusion and/or are likely to cause confusion in the marketplace; (b) an award of damages adduced at trial and/or statutory damages and exemplary damages; (c) a disgorgement of profits by these Defendants attributable to their violations of applicable state or federal law; and (d) such other and further relief as this Court deems just and proper.

## COUNT VII – COMMON LAW TRADEMARK AND TRADE NAME INFRINGEMENT AGAINST ALL DEFENDANTS

94.     Paragraphs 1 through 53 above are incorporated herein as if specifically pled and set forth herein.

95.     By the aforementioned conduct, specifically including the Defendants' use of Analytix's business and product, its trade names, logo, and software, the Defendants have acted in ways that have created confusion, and which in fact have created confusion among customers.

96.     Defendants' wrongful conduct has infringed Analytix's common law trademarks in its inherently distinctive name, its product's name, and its logo, all of which are protected under Florida law.

23

97.    Plaintiff, Analytix, has been damaged by the Defendants' wrongful conduct in that it has suffered by, among other things, lost sales and profits, harm to its goodwill, identity, and reputation, and by confusion among the confusing public.

WHEREFORE, Plaintiff prays for judgment against Defendants, New Castle Consulting, LLC, Michael Sullivan, Pratapreddy Bhimireddy, and Business Intelli Solutions, Inc. for: (a) preliminary and permanent injunctive relief against Defendants, its officers, directors, principals, agents, servants, employees, attorneys, successors and assigns, and all those acting in concert, as is necessary and appropriate to prevent further infringing activities by these Defendants, including activities that cause confusion and/or are likely to cause confusion in the marketplace; (b) an award of damages adduced at trial and/or statutory damages and exemplary damages; (c) a disgorgement of profits by these Defendants attributable to their violations of applicable state or federal law; and (d) such other and further relief as this Court deems just and proper.

## COUNT VIII – COMMON LAW UNFAIR COMPETITION
## AGAINST ALL DEFENDANTS

98.    Paragraphs 1 through 53 above are incorporated herein as if specifically pled and set forth herein.

99.    By the aforementioned conduct, specifically including the Defendants' use of Analytix's business and product, its trade names, logo, and software, the Defendants have acted in ways that have created confusion, and which in fact have created confusion among customers.

100.    Defendants' wrongful conduct constitutes unfair competition and violates Florida law.

101.    Plaintiff, Analytix, has been damaged by the Defendants' wrongful conduct in that it has suffered by, among other things, lost sales and profits, harm to its goodwill, identity, and reputation, and by confusion among the confusing public.

102.    Defendants' unfair competition, unless enjoined by the Court, will continue to cause Plaintiff to sustain irreparable damage, loss and injury, for which Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays for judgment against Defendants, New Castle Consulting, LLC, Michael Sullivan, Pratapreddy Bhimireddy, and Business Intelli Solutions, Inc. for: (a) preliminary and permanent injunctive relief against Defendants, its officers, directors, principals, agents, servants, employees, attorneys, successors and assigns, and all those acting in concert, as is necessary and appropriate to prevent further infringing activities by these Defendants, including activities that cause confusion and/or are likely to cause confusion in the marketplace; (b) an award of damages adduced at trial and/or statutory damages and exemplary damages; (c) a disgorgement of profits by these Defendants attributable to their violations of applicable state or federal law; and (d) such other and further relief as this Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG KEECHL**
Attorneys for Plaintiff Analytix Data Services, LLC
200 SW 1st Avenue, Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300

Date: June 2?, 2009

By:_____
        Scott J. Weiselberg
        Fla. Bar No. 122701
        David L. Ferguson
        Fla. Bar No. 981737
        Ruben E. Socarras, Jr.
        Fla. Bar No. 712256

25

## **VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing Verified Complaint, and that the facts and allegations stated in it are true and accurate.

By: _____

Title: _Partner. - Member._

STATE OF FLORIDA      )
                      ) ss:
COUNTY OF BROWARD     )

BEFORE   ME,   the   undersigned   authority,   personally   appeared _Linh Vu_ as _Member_, on behalf of Analytix Data Services, LLC, who is personally known to me or has produced _____ as identification, and being duly sworn, under oath, deposes and says that the facts and allegations stated in the foregoing Verified Complaint are true and accurate.

SWORN TO AND SUBSCRIBED before me this 29th day of June, 2009.



NOTARY PUBLIC STATE OF FLORIDA

My Commission Expires: _____

Notary Public State of Florida
Catherine Lepore
My Commission DD663476
Expires 06/11/2011

26

# EXHIBIT "A"

## Analytix Data Services LLC

1800 South Ocean Drive suite 505 Hallandale Beach, FL 33009

---

### INDEPENDENT CONTRACTOR AGREEMENT

THIS PROFESSIONAL SERVICES AGREEMENT (this "Agreement") is effective <u><December 19, 2008 ></u>, and is by and between <u>Analytix Data Services LLC</u> ("ADS"), a Florida based corporation with its principal office at 1800 South Ocean Drive suite 505 Hallandale Beach, FL 33009 and <u>Newcastle Consulting, LLC (Principal Mike Sullivan) .</u> ("Contractor/Consultant"), and independent contractor.

<u>Acknowledgements:</u>
Hereby Analytix Data Services Inc will be referred to as ADS and <u>Mike Sullivan</u> will be referred to as Contractor or Consultant.

Contractor certifies they are not a direct employee of Analytix Data Services and are performing work on behalf of Analytix Data Services as an independent contractor. ADS will not withhold any taxes paid to contractor. Contractor will be responsible for paying appropriate taxes on monies received

WHEREAS, ADS desires to retain Contractor, and Contractor desires to be retained by ADS, to perform certain services for ADS on a contractual basis.

NOW THEREFORE, the parties therefore agree as follows:

1. <u>Engagement.</u>
    (a) Contractor agrees for purposes of all provisions of this Agreement ADS's clients shall also expressly be deemed to include any other person, firm, corporation, partnership, or entity of any kind to whom the Contractor is assigned at the direction of ADS's clients.
    (b)   At all times during the course of this Agreement, Contractor shall be and remain an independent contractor of ADS.  Nothing herein shall be construed as creating a relationship of employer and employee between ADS and Contractor.  ADS shall not be responsible for payment of any benefits to Contractor or any Consultant of contractor.  Contractor, and not ADS, shall be responsible for the payment of all benefits to which contractor may be entitled and each Consultant's entire compensation, and all taxes related to any Consultant's benefits and compensation, including employment taxes, worker's compensation, unemployment compensation, and any similar taxes associated with employment. Contractor agrees and represents that it will comply with all requirements of applicable tax and employment laws in respect to any related work performed on behalf of ADS or ADS clients.  Contractor shall indemnify and hold harmless ADS from and against any claim, expense, fine, levy, liability or tax of any kind, including but not limited to any employment, worker's compensation, unemployment compensation or similar tax, sought to be imposed on ADS by any governmental authority or person on the grounds that Contractor is not an employee of ADS. Contractor further agrees to indemnify ADS

Page 1 of 8

## Analytix Data Services LLC

1800 South Ocean Drive suite 505 Hallandale Beach, FL 33009

from and against any costs of litigation and reasonable attorney's fees incurred by ADS in the course of any proceeding in which any such claim, expenses, fine, levy, liability or tax is sought to be imposed on ADS. Contractor further agrees that ADS shall have the right to control and direct the course of any such proceeding dealing with these tax and employment issues.

(c) In the event that Contractor is later deemed to be employee for tax or other purposes by any court or competent governmental agency, then Contractor hereby acknowledge that due to their independent contractor status they have been or will be compensated at a significantly higher rate of pay then employee's of ADS otherwise are paid and that, therefore, Contractor hereby expressly waive any entitlement, right or interest to any ADS employee benefits that they may have or that they may be later found or deemed to have had.

(d) In the event that the terms or parameters of the project have been changed or modified and where the Contractor and its Consultant(s) have continued to perform in accordance with said modifications yet have not executed, or have failed or refused to execute upon request, a new contract or rider or amendment to this agreement then at the sole election of ADS the Contractor and its Consultant(s) may be deemed to have assented to the new terms or modifications or ADS may choose to withhold payment for services performed and incur no liability therefore until said terms or modifications have been executed and delivered.

(e) In the event that for any reason ADS is not paid by its client for some or all of the services performed by Contractor, then ADS shall be under no obligation to pay Contractor for any of the services for which ADS has not likewise been paid.

(f) ADS shall have no liability for any expenses incurred by the Independent Contractor

(g) In the event that the Independent Contractor incurs extraordinary or unanticipated expenses, ADS in its sole discretion may agree to assume said expenses but only by its prior written approval.

(h) ADS shall not ordinarily provide any training or technical assistance to the Independent Contractor unless specifically provided for by separate written contract between ADS and Consultant.

(i) Contractor acknowledges and agrees that all ADS and ADS client data, files and any documents that are proprietary to ADS will only remain on ADS or Client servers and hard-drives. Under no circumstances will contractor use external hard drives or any other means to move data from Client or ADS systems or servers.

(j) Contractor acknowledges and agrees to represent himself at all times as an associate or contractor of ADS and will conduct himself in the best interest of ADS at all times. Contractor will not recommend or refer resources to any other client of ADS under any circumstances without prior written approval. ADS may wish to compensate contractor with a mutually agreed referral fee for any resources assignments.

2.  Confidential Information. Contractor agrees that it will not, without ADS's express written consent, directly or indirectly communicate, divulge or disclose to, or use for the benefit of Contractor or any other person or entity other than ADS, any of ADS's trade secrets, proprietary data and other confidential information, including information received in confidence from their parties, which trade secrets, proprietary data and other confidential information were communicated to or otherwise learned or acquired by Contractor in the course of Contractor's association with ADS. As used herein, the phrase "trade secrets, proprietary data and other confidential information" means information relating to any (a) marketing or sales information, including the key or contact personnel of clients of ADS, pending

## Analytix Data Services LLC

1800 South Ocean Drive suite 505 Hallandale Beach, FL 33009

projects of clients of ADS and ADS's client's internal demand for consultants, (b) lists of ADS's present and prospective clients, (c) credit or financial information of ADS, (d) pricing, marketing or trade information, and (e) parties with which or whom ADS does business or proposes to do business. Notwithstanding the foregoing, the foregoing definition of trade secrets, proprietary data and other confidential information shall not apply to such information which (i) is or becomes public information through no fault of Contractor, (ii) is required to be disclosed in the course of Contractor's activities on behalf of ADS or by a court or other governmental agency of competent jurisdiction, (iii) is already in the possession of Contractor and was not received on a confidential basis from ADS or any person associated with ADS either prior to or after the formation of ADS, or (iv) becomes available to Contractor on a nonconfidential basis from a source other than ADS or a client of, or a person associated with, ADS, provided that such source is not bound by a confidentiality agreement with ADS. The agreement of Contractor set forth in this paragraph shall remain in effect with respect to information learned or acquired by Contractor in the course of Contractor's association with ADS for as long as such information remains trade secrets, proprietary data and other confidential information.

3. _Ownership and Return of Property_. Contractor agrees that all tangible materials (whether originals or duplicates), including, but not limited to, books, records, manuals, sales literature, training materials, media containing computer programs, specifications, models, correspondence, documents, contracts, orders, messages, memoranda, notes, invoices and receipts in Contractor's possession or control which contain any of ADS's trade secrets, proprietary data and other confidential information, whether furnished to Contractor by ADS or prepared, compiled or acquired by Contractor while associated with ADS, are and shall be the sole property of ADS. Contractor agrees that at any time upon request of ADS, and in any event promptly upon termination of Contractor's association with ADS, Contractor shall transfer and deliver all such materials to ADS.

4. _Proprietary Developments; Assignment of Rights_. Contractor hereby assigns to ADS all of Contractor's right, title and interest in and to any and all inventions, discoveries, designs, ideas, computer systems, computer programs, formulas, drawings, models, processes, methods, techniques, devices, and data, and any and all patents, copyrights and improvements on any thereof (all hereinafter called "Developments"), whether or not patentable or copyrightable, that Contractor may solely or jointly conceive or acquire during Contractor's association with ADS, or where said conception or acquisition relates directly to the research or development performed on behalf of ADS or its clients by Contractor, or where said conception or acquisition results directly from any task performed by Contractor for or in connection with ADS or its clients. Contractor hereby assigns to ADS all Contractor's right, title and interest in and to all such Developments from and after the time of creation. Contractor agrees to disclose promptly all such Developments to ADS and to comply with all of ADS's reasonable instructions and sign all documents relative to such Developments for the purpose of vesting, confirming or securing ADS's title thereto, and Contractor agrees to do anything else reasonably requested by ADS, at ADS's sole cost and expense, to enable ADS to secure a patent, to register a copyright or to protect ADS's interest therein. Without limiting the foregoing, Contractor acknowledges and agrees that the copyright, patent, and any other intellectual property rights in all Developments which are created within the scope of Contractor's activities on behalf of ADS belong to ADS and that any copyrightable Development so created by Contractor is a "work made for hire" within the meaning of the Copyright Act of 1976 for the purposes of that Act.   Notwithstanding the foregoing provisions of this paragraph, Contractor

**Analytix Data Services LLC**

1800 South Ocean Drive suite 505 Hallandale Beach, FL 33009

understands and is hereby notified that this Agreement with respect to the assignment of Contractor's right, title and interest in Developments shall not apply to any Development which was developed entirely on Contractor's own time and for which no equipment, supplies, facility or trade secret information of ADS or of a client of ADS was or were used, unless (i) the Development relates to the business of ADS or a client of ADS or to ADS's actual or demonstrably anticipated research and development, or (ii) the Development results from any work performed by Contractor in connection with Contractor's association with ADS.  The provisions of this paragraph shall survive termination of Contractor's association with ADS.

   5.  <u>Covenants</u>.

      (a)  <u>Covenant Not to Compete</u>.  Contractor agrees that during, and for a period of two years after the termination of Contractor's association with ADS, Contractor shall not engage in systems design, consulting or service or the business of technical staff augmentation for or with respect to any client of ADS for which Contractor performed services pursuant to an agreement or understanding with ADS or with respect to which Contractor obtained or had access to trade secrets, proprietary data or other confidential information of ADS. Contractor understands this is a possible right-to-hire position. whereas ADS reserves the right to hire consultant after 6 months of tenure as a paid consultant or otherwise mutually agreed and written.

      (b)  <u>Covenant Not to Solicit</u>.  Contractor agrees that during and for a period of two years after the termination of Contractor's association with ADS, Contractor will not perform services or design, develop, manufacture, or sell products to any client of ADS for which Contractor performed services pursuant to an agreement or understanding with ADS or with respect to which Contractor obtained or had access to contact information by association or on business with ADS, trade secrets, proprietary data or other confidential information of ADS, to the extent that such products and services compete with products sold or services performed by ADS.

      (c)  <u>Covenant Not to Disclose</u>.  Contractor agrees that it shall not in any way disclose or communicate with any other Contractor or any client or employee of ADS the terms of compensation agreed upon by the parties hereto.  Any such disclosure shall constitute a breach of this Agreement.  This provision shall not apply to the good faith negotiation of the terms of any new contract.

      (d)  <u>Best Efforts</u>.  Contractor agrees that it will at all times faithfully and industriously perform all of the covenants that may be required herein and to perform such other duties as are incident to the express and implicit terms and conditions of this Agreement.  Contractor further agrees that during the term of this Agreement it will maintain adequate availability and equipment to perform in a timely and professional manner.  Contractor shall not act in a manner which may be contrary to, or is in competition with the interest, welfare or benefit of ADS.

      (e)  <u>Covenant Not to Induce</u>.  Independent of any obligation under any other paragraph of this Agreement, during the term of Contractor's association with ADS and for a period of two years following the termination of its association with ADS, Contractor shall not, directly or indirectly, whether as an individual for his own account or for or with any other person, firm, corporation, partnership, joint venture, or entity whatsoever solicit, induce or endeavor to entice away from ADS or any client of ADS, for which Contractor performed services or otherwise dealt with on behalf of ADS or obtained special knowledge of as a result of its position with ADS, any person who was employed with ADS or any client of ADS at any time during Contractor's association with ADS, in order to accept employment or association with another person, firm, corporation or any entity whatsoever.  Contractor

## Analytix Data Services LLC

1800 South Ocean Drive suite 505 Hallandale Beach, FL 33009

shall not approach any such person for any such purpose or authorize or knowingly cooperate with the taking of any such action by any other individual person or entity.

6.  <u>Term and Termination</u>.
This Agreement shall remain in force from the effective date and will automatically expire on Upon 24 months from the last day of invoice from contractor . Upon mutual written agreement, the parties may renew this Agreement for a specific period of time after the Agreement automatically expires.
Neither ADS or Contractor may terminate this Agreement without cause except upon mutual written agreement. Either party shall have the right to terminate this Agreement if the other party commits a material breach of any of the material provisions of this Agreement which are not cured within thirty (30) days after written notice by the non-breaching party to the breaching party. The obligations of the parties set forth in Section 5 (Covenants) shall survive the termination of this Agreement.

7.  <u>Damages</u>.
Contractor acknowledges and agrees that it is will be difficult or impossible to measure the damanges to ADS business should Contractor violate any provisions of section 5. Should Contractor violate any covenants of Section 5, the parties hereto acknowledge that damages in the amount of 80% of any gross revenue will be paid to ADS or to the extent of Florida Law allows. Contractor agrees and acknowledges they are liable for consultant actions while onsite and up to 1yr after the termination of the agreement. If Contractor or any of contractors consultants, associates or employees violates any covenants of Section 5 during and after the termination of this Agreement contractor agrees to liables in section 7.

8.  <u>Choice of Law, Severability</u>.  The parties agree that this Agreement shall be governed by the laws of the State of Florida. The parties agree that no waiver of any breach of any provision of this Agreement shall be constituted to be a waiver of any succeeding breach or as a modification of such provision. The parties agree that the provisions of this Agreement shall be severable and in the event that any provision of this Agreement shall be found by any court to be unenforceable, in whole or in part, the remainder of this Agreement shall nevertheless be binding and enforceable. The parties agree that if any restriction in this Agreement shall be determined to be invalid, it shall automatically be modified, or may be modified by a court of competent jurisdiction, to the extent necessary to make it valid.

9.  <u>Disclosure</u>.  Contractor shall make the terms and conditions of this Agreement known to any person, business or any entity whatsoever, with which it becomes associated subsequent to the termination of this agreement with ADS. ADS shall have the right to make the terms of this Agreement known to third persons. Neither party shall disclose the financial terms of this Agreement without prior notification and consent of the other.

10. <u>Acknowledgment; Successors and Assigns</u>.  Each party acknowledges and represents that it has reached this Agreement, understands it, and agrees to abide by its terms. Contractor may not assign this Agreement without the prior written consent of ADS. This Agreement is binding on Contractor's permitted successors and assigns and on ADS's successors and assigns.

# Analytix Data Services LLC

1800 South Ocean Drive suite 505 Hallandale Beach, FL 33009

11. Sole Agreement. This Agreement contains the entire agreement between the parties hereto. No representation, modification, understanding or statement between the parties shall be binding upon them unless it has been documented in writing and executed by all the parties hereto.

12. Injunctive Relief. In the event that there is a material breach of any of the material provisions of this agreement, ADS shall be authorized and entitled to obtain from any court of competent jurisdiction preliminary and permanent injunctive relief as well as an equitable accounting of all profits or benefits arising out of such violation, which rights and remedies shall be cumulative and in addition to any other rights or remedies to which ADS may be entitled.

13. Attorney's Fees. In the event Contractor commits a material breach of any of the material provisions of this agreement, Contractor further agrees to pay the attorney fees, court costs and litigation expenses incurred by ADS in enforcing any of the provisions of this Agreement.

14. Waivers. The waiver or nonenforcement by ADS of any breach of any provision of this Agreement by Contractor shall not operate or be construed as a waiver of any subsequent breach. No wavier shall be deemed effective unless in writing and executed by ADS.

15. Notices. All notices pursuant to this Agreement must be in writing. All notices to ADS shall be sent to 1800 South Ocean Drive suite 505 Hallandale Beach, FL 33009. All notices to Contractor shall be to its principal place of business as last indicated in the books and records of ADS. All notices shall be considered effective when delivered personally or three (3) days after deposit of said notice in the U.S. Post Office, registered mail, postage prepaid, return receipt requested, addressed to the address of the party to whom directed as set forth herein.

## Analytix Data Services LLC
1800 South Ocean Drive suite 505 Hallandale Beach, FL 33009

*Contractor Agreement*

*Signatures Page*

ADS and Contractor agree this agreement constitutes the entire agreement between ADS and Contractor. Contractor certifies they are responsible for all appropriate taxes.

**Newcastle Consulting, LLC Taxpayer ID:** _____ 20-8503813_____

Employer Address:_____ 23923 Laceys Tavern Court  Aldie, VA 20105_____

Signature: _Michael Sullivan_ Date: _12/17/08_

Print Name: _MICHAEL SULLIVAN_

**Analytix Data Services LLC.**

Signature: _____Date:___December 19, 2008_____

Print Name: _____Linh Vu_____   Title: _____President_____

# Analytix Data Services LLC
1800 South Ocean Drive suite 505 Hallandale Beach, FL 33009

## EXHIBIT A

During employment consultant will be exposed to ADS clients. Consultant agrees to honor covenants set for in section 5 of the agreement.

### PROJECT

Client 1:                                ALL ADS Projects

----------------------------------------------------------------

Exhibit B Signatures

Newcastle Consulting, LLC Taxpayer ID:  _____20-8503813_____

Employer Address:_____ 23923 Laceys Tavern Court  Aldie, VA 20105_____

Signature: _____Date:_____

Print Name:  _____Mike Sullivan_____

Analytix Data Services LLC

Signature: _____Date:__December 19, 2008____

Print Name: _____Linh Vu_____  Title: _____President_____

# EXHIBIT "B"

Apr 01 06 02:13p    MARK ROLAND          972 788-0610          p.12

# Analytix Data Services Inc.
19701 E. Country Club Drive Building 5 Suite 105
Aventura, FL 33180

## EXHIBIT C

## AGREEMENT CONCERNING CONFIDENTIALITY, PROPRIETARY DEVELOPMENTS AND COVENANT NOT TO COMPETE

THIS AGREEMENT is made and entered into by and between **Pratap Beehmireddy** ("Consultant") and Analytix Data Services Inc.("ADS") as of **January 31, 2006.**

### RECITALS

ADS has dedicated substantial time and resources in the development of its relationships with its clients;

ADS owns substantial trade secrets, proprietary data and other confidential information which is extremely valuable to its business;

Consultant is an employee or subcontractor of **Datasoft Technologies Inc.**("Contractor") who has entered into a Professional Services Agreement with ADS pursuant to which Contractor will compensate Consultant to provide services to ADS and ADS's clients;

Consultant, in connection with Consultant's employment by, or association with, Contractor will be associated with ADS and have access to, and may participate in the development of, information relating to client relationships of ADS and trade secrets and proprietary data and other confidential information of ADS or clients of ADS.

In consideration of the foregoing and the covenants set forth herein, the parties agree as follows:

1.   Confidential Information. Consultant agrees that Consultant will not, without ADS's express written consent, directly or indirectly communicate, divulge or disclose to, or use for the benefit of Consultant or any other person or entity other than ADS, any of ADS's trade secrets, proprietary data and other confidential information, including information received in confidence from third parties, which trade secrets, proprietary data and other confidential information were communicated to or otherwise learned or acquired by Consultant in the course of Consultant's association with ADS.  As used herein, the phrase "trade secrets, proprietary data and other confidential information" means information relating to any (a) marketing or sales information, including the key or contact personnel of clients of ADS, pending projects of clients of ADS and ADS's client's internal demand for consultants, (b) lists of ADS's present and prospective clients, (c) credit or financial information of ADS, (d) pricing, marketing or trade information and (e) parties with which or whom ADS does business or proposes to do business.  Notwithstanding the foregoing, the foregoing definition of trade secrets, proprietary data and other confidential information shall not apply to such information which (i) is or becomes public information through no fault of Consultant, (ii) is required to be disclosed in the course of Consultant's activities on behalf of ADS or by a court or other governmental

# Analytix Data Services Inc.
### 19701 E. Country Club Drive Building 5 Suite 105
### Aventura, FL 33180

agency of competent jurisdiction, (iii) is already in the possession of Consultant and was not received on a confidential basis from ADS or any person associated with ADS either prior to or after the formation of ADS, or (iv) becomes available to Consultant on a non-confidential basis from a source other than ADS or a client of, or a person associated with, ADS, provided that such source is not bound by a confidentiality agreement with ADS. The agreement of Consultant set forth in this paragraph shall remain in effect with respect to information learned or acquired by Consultant in the course of Consultant's association with ADS for as long as such information remains trade secrets, proprietary data and other confidential information.

2.  Ownership and Return of Property. Consultant agrees that all tangible materials (whether originals or duplicates), including, but not limited to, books, records, manuals, sales literature, training materials, media containing computer programs, specifications, models, correspondence, documents, contracts, orders, messages, memoranda, notes, invoices and receipts in Consultant's possession or control which contain any of ADS's trade secrets, proprietary data and other confidential information, whether furnished to Consultant by ADS or prepared, compiled or acquired by Consultant while associated with ADS, are and shall be the sole property of ADS. Consultant agrees that at any time upon request of ADS, and in any event promptly upon termination of Consultant's association with ADS, Consultant shall transfer and deliver all such materials to ADS.

3.  Proprietary Developments; Assignment of Rights. Consultant hereby assigns to ADS all of Consultant's right, title and interest in and to any and all inventions, discoveries, designs, ideas, computer systems, computer programs, formulas, drawings, models, processes, methods, techniques, devices, and data, and any and all patents, copyrights and improvements on any thereof (all hereinafter called "Developments"), whether or not patentable or copyrightable, that Consultant may solely or jointly conceive or acquire during Consultant's association with ADS, or where said conception or acquisition relates directly to the research or development performed on behalf of ADS by Consultant, or where said conception or acquisition results directly from any task performed by Consultant for or in connection with ADS. Consultant hereby assigns to ADS all Consultant's right, title and interest in and to all such Developments from and after the time of creation. Consultant agrees to disclose promptly all such Developments to ADS and to comply with all of ADS's reasonable instructions and sign all documents relative to such Developments for the purpose of vesting, confirming or securing ADS's title thereto, and Consultant agrees to do anything else reasonably requested by ADS, at ADS's sole cost and expense, to enable ADS to secure a patent, to register a copyright or to protect ADS's interest therein. Without limiting the foregoing, Consultant acknowledges and agrees that the copyright, patent, and any other intellectual property rights in all Developments which are created within the scope of Consultant's activities on behalf of ADS belong to ADS and that any copyrightable Development so created by Consultant is a "work made for hire" within the meaning of the Copyright Act of 1976 for the purposes of that Act. Notwithstanding the foregoing provisions of this paragraph, Consultant understands and is hereby notified that this Agreement with respect to the assignment of Consultant's right, title and interest in Developments shall not apply to any Development which was developed entirely on Consultant's own time and for which no equipment, supplies, facility or trade secret information of ADS or of a client of ADS was or were used, unless (i) the Development relates to the business of ADS or a client of ADS or to ADS's actual or demonstrably anticipated research or development, or (ii) the Development results from any work performed by Consultant in connection with Consultant's association with ADS. The provisions of this paragraph shall survive termination of Consultant's association with ADS.

# Analytix Data Services Inc.
19701 E. Country Club Drive Building 5 Suite 105
Aventura, FL 33180

4.  Covenants.
   (a) Covenant Not to Compete. Consultant agrees that, during, and for a period of two years after the termination of Consultant's association with ADS, Consultant shall not directly or indirectly engage in systems design, consulting or service or the business of technical staff augmentation for or with respect to any client of ADS for which Consultant performed services pursuant to an agreement or understanding with ADS or Contractor or with respect to which Consultant obtained or had access to trade secrets, proprietary data or other confidential information of ADS. Consultant agrees that the foregoing covenant shall apply to the geographical region consisting of Chicago, Illinois and the metropolitan Chicago area, including the Illinois counties of Lake, Cook, DuPage, Kane, Kankakee, McHenry, Kendall and Dekalb and the Indiana counties of Lake and Porter. Consultant acknowledges that any solicitation of ADS' clients to use any other means of services other than ADS services is a violation of this agreement and is enforceable under the damages section 9.
   (b) Covenant Not to Solicit. Consultant agrees that during, and for a period of two years after the termination of Consultant's association with ADS (whether or not such association is by virtue of Contractor's association with ADS), Consultant will not perform directly or indirectly services or design, develop, manufacture, or sell products to or for current clients of ADS (or assist others to conduct such activities), whether or not such clients are located within the geographic restriction set forth in (a) above, to the extent that such products and services compete with products sold or services performed by ADS; and
   (c) Covenant Not to Induce. Consultant agrees that during, and for a period of two years after the termination of Consultant's association with ADS, Consultant will not employ or seek directly or indirectly to employ any person then an employee of ADS, or solicit or induce such person to terminate his employment with ADS (or assist others to conduct such activities).

5.  No Prior Restrictions. Consultant warrants the Consultant is not a party nor subject to any restrictive covenant or other agreement in any way limiting Consultant's activities on behalf of Contractor and ADS and that Consultant will hold ADS harmless from any and all suits and claims arising out of any such restrictive covenants or other such agreements.

6.  Remedies. In the event of a violation of this Agreement, Consultant agrees that ADS shall be entitled, as a matter of right, in addition to other damages and remedies otherwise available to it at law or in equity, to injunctive relief restraining any further violation of this Agreement by Consultant. Consultant acknowledges that the limitations set forth in this Agreement will not cause Consultant undue hardship nor unreasonably interfere with Consultant's ability to earn a livelihood.

7.  Non-Disparagement. Consultant further agrees that Consultant will not disparage ADS or its products or services to ADS's clients or in any manner, directly or indirectly or seek to interfere with, disrupt, or terminate ADS's relationship with said clients during the term or upon the termination of this Agreement or upon the suspension or termination of Consultant's association with ADS.

8.  Choice of Law; Severability. The parties agree that this Agreement shall be governed by the laws of the State of Illinois. The parties agree that no waiver of any breach of any provision of this Agreement shall be construed to be a waiver of any succeeding breach or as a modification of such provision. The parties agree that the provisions of this Agreement shall be severable and in the event that any provision of this Agreement shall be found by any court to be unenforceable, in whole or in part, the remainder of this Agreement shall nevertheless be binding and enforceable. The parties agree that if any restriction in this

## Analytix Data Services Inc.
19701 E. Country Club Drive Building 5 Suite 105
Aventura, FL 33180

Agreement shall be determined to be invalid, it shall automatically be modified, or may be modified by a court of competent jurisdiction, to the extent necessary to make it valid.

9.   Acknowledgement; Successors and Assigns.  Consultant acknowledges and represents that Consultant has read the foregoing Agreement, understands it, and agrees to abide by its terms.  This Agreement is binding on Consultant and Consultant's heirs, administrators and executors and shall inure to the benefit of ADS's successors and assigns.

10.  Damages.  The parties hereto acknowledge that ADS will incur significant damages, including expenses relating to training and project delays, in the event Contractor terminates this Agreement, without cause prior to the completion of any active projects (including those set forth on Exhibit B) . The parties further acknowledge that the amount of such damages will be difficult or impossible to estimate, and accordingly, the parties agree that if Contractor terminates this Agreement without cause prior to the full completion of any projects for which Contractor is providing Services (including the projects set forth on Exhibit B), contractor shall pay to ADS, if ADS so elects, liquidated damages in the amount of the greater of $200,000.00 or 50% of the total amount payable to Contractor under this Agreement. ADS shall be entitled to withhold all unpaid invoices from contractors consultants until damages are collected.

Nothing herein shall prevent ADS from electing to pursue any other remedy available at law in equity unless precluded by its election of liquidated damages.

I hereby acknowledge that as a 1099 Independent Consultant or as an employee or subcontracted emplpoyee of contractor I have been or will be receiving a significantly higher rate of pay than is otherwise possible for or available to an ADS employee.
I therefore, hereby expressly waive any entitlement, right or interest to any ADS employee benefits that I may have or that I may be later found or deemed to have by any court or competent governmental agency.

Apr 01 06 02:15p    MARK ROLAND            972 788-0610           p.16

# Analytix Data Services Inc.
19701 E. Country Club Drive Building 5 Suite 105
Aventura, FL 33180

**IN WITNESS WHEREOF,** the parties have executed and delivered this Agreement as of the date set forth above. The parties agree this agreement constitutes the entire agreement.

-------------------------------------------------------------------

**Consultant Signatures**

**Consultant**

Consultant Signature: _____

Consultant Name: __PRATAP BHIMIREDDY__    Date: __03|31|06__
(Print Clearly)

**Analytix Data Services Inc**

President Signature: _____    Date: __07/31/06__

Print Name: __Michael P. Boggs__    Title: __Pcs W st__
(Print Clearly)                        (Print Clearly)

JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ANALYTIX DATA SERVICES, LLC, a Florida limited liability company, et. al. | NEW CASTLE CONSULTING, LLC, a foreign limited liability company, et. al. |

**(b)** County of Residence of First Listed Plaintiff   **Broward**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Scott J. Weiselberg, Esq., Kopelowitz Ostrow Ferguson Weiselberg Keechl, 200 SW 1st Ave., 12th Floor, Ft. Lauderdale, FL 33301, Tel: 954-525-4100

Attorneys (If Known)

0: 09 CV 60967  Zloch / Rosenbaum

(d) Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☑ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☑ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☑ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☑ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page:)

a) Re-filed Case ☐ YES ☐ NO    b) Related Cases ☐ YES ☐ NO

JUDGE                                            DOCKET NUMBER

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

## VII. CAUSE OF ACTION
15 U.S.C. § 1125

LENGTH OF TRIAL via  10  days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE  6/29/09

**FOR OFFICE USE ONLY**

AMOUNT  350 00    RECEIPT #  546691    IFP